[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife, 42, whose birth name is Barrett, and the defendant husband, 45, married on March 4, 1973 in Stamford, Connecticut. Three children were born to the marriage, two of whom have attained majority and have graduated from high school. The youngest, Greg, was born on May 30, 1985.
The plaintiff is a high school graduate and was, until the birth of her oldest child 24 years ago, a hairdresser. The plaintiff has returned to work at a gift shop working from 7:30 a.m. to 2:30 p. m. doing general office work. Her affidavit lists monthly gross income of $1,170.00 and net, after taxes of $936.25 or $217.73 weekly net disposable net income. The plaintiff is in good health.
The defendant is a carpenter who operates his own business through Giannattasio Building Contractors, Inc., which was incorporated on June 1, 1984. The defendant is the sole stockholder. In addition to contracted work,, the defendant has built or renovated several houses on speculation. Some proved to be very profitable providing a substantial increase in his income for the year of the sale. When the trial commenced on August 7, 1997 the defendant filed a financial affidavit listing a weekly gross draw of $900.00 and a net after taxes of $626.20.
The plaintiff's income for 1996 was $3,041.00. The parties' joint tax return (Plaintiff's Exhibit #10) lists total W-2 wages as $50,741.00. The defendant's salary was $47,700.00.
For many years the defendant had also worked part time as a special police officer. In early 1995 the defendant experienced CT Page 10961 chest pains. He went to the hospital and saw a Dr. Yapp who is a heart specialist, (cf. Defendant's Exhibit K). In November, 1996, he was seen again as an out patient at St. Joseph's Hospital. (cf. Defendant's Exhibit L). He is not presently seeing any doctor.
The court cannot ignore the defendant's speculation houses that have proven, in a majority of the cases, to have been successful. The court finds that the defendant's speculation projects are part of his business enterprise. The court cannot impute an earning capacity to the defendant arrived at by considering his past projects tempered by the result of his most recent speculation, as well as at least one loser. The court concludes that the defendant's current earning capacity is $50,000.00. His testimony that finding a potentially profitable speculation has become more difficult is accepted by the court. He has none pending at present.
The parties' principal asset is the marital home located at 4 Glen Gorham Lane, Darien, which is free of encumbrance and valued at $1,000,000. The defendant has utilized a home equity loan as a source of funds for his business currently acknowledging a $25,000.00 balance exists for money advances to his company. The defendant lists his one-half interest in the furnishings of the home at $30,000.00, a 1993 motorcycle at $8,000.00, a savings account of $28,000.00 and net cash in the corporation of $35,000.00.
The plaintiff lists, in addition to her one-half interest in the home, a 1994 Jeep Limited at $13,500.00, an M.G. at $3,000.00, bank accounts totaling $2,100.00 and cash value in life insurance of $35,000.00 The insured and the beneficiary of the life insurance is not revealed.
The principal cause of the marriage breakdown can be found in the defendant's behavior. About two years ago, the defendant stopped sleeping with the plaintiff in their bed. The defendant told the plaintiff that he "needed space." His attitude toward work and other interests changed. After he took a trip to Florida on his motorcycle, he told the plaintiff there was another woman in his life. In March, 1996, he moved from the home. Last spring he and his lady friend began living together.
The plaintiff has recently been dating another man, but this companionship began after the marriage had irretrievably broken CT Page 10962 down, Venuti v. Venuti, 185 Conn. 156 (1981). The evidence falls short of proving the defendant's claim that the plaintiff is living together with another so as to trigger § 46b-86(b). Technically, the statute applies only to post judgment activity after an alimony order has been made as part of the final judgment. By analogy, the defendant claims no alimony order, or only a nominal one, should now be entered because of the plaintiff's social activity. This court does not find the plaintiff to be living together with another person. (cf. Kaplanv. Kaplan, 186 Conn. 387 (1982).
The plaintiff called a witness, her sister, to bolster her claim that the defendant had a cash cache in a file cabinet sometime in 1991. There was no evidence to demonstrate that the plaintiff did not have access to the envelope containing the cash. The court attaches no significance to this testimony.
The plaintiff admitted to an act of infidelity that occurred twenty-two years ago. She told the defendant about it one week later. The fact that the parties remained married for the ensuing twenty years convinces the court the plaintiff's indiscretion had no bearing on the marriage breakdown.
The parties have an agreement that an order of joint legal custody may enter with the child's principal residence with the plaintiff in Darien, or in an adjacent town. The defendant is to have liberal visitation.
The plaintiff urges that the home be marketed next Spring. The defendant urges an immediate sale. The court finds an immediate marketing of the home equitable and will so order for the reason that liquidation will provide the plaintiff with the ability to purchase a home she can carry and will provide the defendant with funds that he previously could draw from the equity of the house.
Having reviewed the evidence in light of the applicable statutes including § 46b-81 and 46b-82, as well as relevant case law, the court enters judgment dissolving the marriage on the ground of irretrievable breakdown and the following orders as part of the decree.
1. The parties are awarded joint legal custody of the minor son with the child's primary residence with the plaintiff. The parties further agreed as part of this order that the plaintiff CT Page 10963 will maintain the child's residence in Darien or in an adjacent town. The defendant is given liberal visitation with the child, specifics being left to the parties.
2. The plaintiff shall have exclusive possession of the marital home, and shall be solely responsible for the utilities, heat and maintenance provided that the parties shall share the cost of any one repair exceeding $300.00. Unless an emergency, the defendant shall be informed and allowed to address the needed repair in lieu of cash payment to another tradesman, the court's intent being to utilize his construction skills and resources.
3. The marital home shall be listed for sale immediately. If the parties cannot agree on a listing broker, price, terms of the listing or like details, either party may move this court for a further articulation. Upon completion of the sale the plaintiff is awarded 60% of the net proceeds and the defendant is awarded 40% of the net proceeds. This unequal division is based on the defendant's greater vocational skills, his greater opportunity for future acquisition of capital assets as well as the causes for the dissolution, although the court has considered all of the statutory elements. The $25,000.00 advanced to the defendant's corporation shall be charged to the defendant's share.
4. Child support is based on the net disposable earnings each party has listed on the respective financial affidavits, of $217.73 for the plaintiff and $626.20 for the defendant, a total of $843.93. The defendant's share is 74% of $201.00 or $149.00 weekly ordered paid by the defendant to the plaintiff as child support, based on the guidelines.
5. The defendant shall continue to provide medical insurance for the minor child at his expense. § 46b-84(d) applies to this order. The parties shall share equally any uninsured medical expenses incurred for the care of the minor child.
6. The defendant shall pay to the plaintiff, as periodic alimony, the sum of $300.00 weekly for a period of 36 months, and at the rate of $200.00 weekly thereafter. The alimony shall terminate upon the death of either party, the plaintiff's remarriage or further court order. The provisions of § 46b-86(b) apply to this order.
7. The defendant shall continue to maintain the life insurance policy, listed on his affidavit, naming the plaintiff CT Page 10964 primary beneficiary for so long as he is obligated to pay periodic alimony, but, no longer than ten years from the date of judgment.
8. The plaintiff lists no liabilities. The defendant shall be solely responsible for the three liabilities he lists on his financial affidavit.
9. The parties shall divide the contents of the marital home in equal portions, based on value. Any items received from family by gift or inheritance shall remain the sole property of that party and shall not be subject to division. Either party may move for further articulation if necessary.
10. The plaintiff shall retain the motor vehicles registered to her and the defendant shall retain his motorcycle.
11. The defendant shall retain his business as his sole property and each party shall retain the remaining assets as same are now owned or possessed.
12. The defendant shall pay to the plaintiff as an allowance to prosecute, the sum of $10,000.00, due on or before December 1, 1997.
Counsel for the plaintiff is directed to prepare the judgment file.
HARRIGAN, J.