[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff wife, 44, whose birth name is Rivera, and the defendant husband, 47, married on September 10, 1977, in Bronx County, New York. The plaintiff has lived continuously in Connecticut for over one year prior to the filing of this action for a dissolution of the marriage and other relief returnable to February 4, 1997. No child has been born to the wife since the marriage. All the allegations of the complaint are found to have been proven.
The plaintiff has worked throughout the marriage for Xerox, CT Page 8661 having acquired 23 years seniority. The defendant worked throughout the marriage for Sikorski Aircraft acquiring over 23 years seniority. The parties managed their finances carefully, living within their means. Both are college graduates with the defendant receiving an M.B.A. in 1975.
The plaintiff currently earns a salary of $1,038.20 gross weekly and after taxes withheld, $717.79. Her base salary as of March 31, 1998 is $49,419, (Defendant's Exhibit U, p. 1). She was paid a sales bonus of $1,785, and profit sharing of $5,086 to and including April 15, 1998, (Plaintiff's Exhibit #1). The plaintiff leases an automobile for which she is reimbursed. Her 1997 gross earnings were $57,969.61, (Defendant's Exhibit O). In addition, the plaintiff has a vested "Retirement Income Guarantee Plan" which has a current monthly benefit earned to date of $1,032, (Defendant's Exhibit U). There are two alternative ways plaintiff may build her retirement benefits, referred to as "Cash Balance Retirement Account" and "Transitional retirement Account". Upon retirement, a detailed comparison is made to determine which alternative will then provide the greatest monthly benefit, (Defendant's Exhibit U, p. 6). She has an ESOP containing 93 Xerox shares valued at $29,719 on Marcn 31, 1998, (Defendant's Exhibit U, p. 8). As of March 31, 1998, the plaintiff had $16,153 invested in her profit sharing and savings plan, (Defendant's Exhibit U, p. 11). Her 1997 total pay was $68,693 when the estimated cost to provide the fringe, (Defendant's Exhibit U, p. 1), is added.
In addition to the Xerox items discussed above, the plaintiff has an EDS Deferred Compensation Plan valued at $186,720.34 as of March 31, 1998, (Plaintiff's Exhibit #12). The plaintiff was outsourced by Xerox to EDS for 18 months, returning to Xerox in January, 1996. She retained her seniority at Xerox.
The plaintiff has an IRA account at Fidelity Investments valued at $51,580.86 as of December 31, 1997, (Plaintiff's Exhibit #24). She also lists Xerox FCU accounts totaling $3,810 as of April 28, 1998, a rental security deposit held by her landlord of $1,000 and a fur coat and jewelry of $5,000.
The defendant currently earns a gross weekly salary of $1,685 as manager of Parametric Analysis and after taxes withheld a net weekly of $ 1,221.91. He has a vested pension which, on a single life annuity basis, would pay a monthly pension benefit commencing on March 1, 2006, when he attains age 55, of CT Page 8662 $1,303.52, $2,216 commencing on March 1, 2013 and $2,607 commencing on March 1, 2016. These amounts assume that the defendant terminates from the plan on March 26, 1998 at age 47, (Plaintiff's Exhibit #26). He places a present value of $76,477 on his pension. The defendant also has a employee savings plan having a total value of $347,257.62 as of March 25, 1998 consisting of savings, matched funds and an ESOP, (Plaintiff's Exhibit #26). The defendant lists an IRA maintained at Fidelity valued at $96,382 on his June 9, 1998 financial affidavit as well as bank accounts totaling $13,971.
The parties own real estate known as 1206 Foxboro Drive, Norwalk which they agree has a fair market value of $350,000 per their stipulation filed June 9, 1998. It is subject to a $236,000 mortgage balance. The parties pooled their incomes to pay off their college loans and to save for their home purchases.
The parties jointly own a Paine Webber Investment Account that was valued at $34,495.03 on March 31, 1998 containing 400 shares of Sara Lee Corp., 100 shares of Wellman Inc., and $7,632.53 in cash, (Plaintiffs Exhibit #11). Sara Lee closed at 50-1/16th on Thursday, August 7, 1988 and Wellman Closed at 17-7/16ths.[1]
The parties have two checking accounts which the defendant lists as totaling $13,971. They have joint account at Fidelity which the plaintiff lists as worth $7,850 and the defendant lists at $7,314. The defendant lists a joint item "SFCU" for $2,688, "Bond" for $8,362 and "Fleet" for $1,266, a total of $12,316. The defendant lists jointly owned U.S. Savings Bonds at $4,734.
After the separation the defendant used joint funds to pay the mortgage installments and his lawyer. The plaintiff borrowed a substantial amount to finance the litigation paying 3 successive lawyers $3,000, $43,000, and $15,000, incurring total debt to Irene Auriana of $51,500.
The plaintiff has experienced some recent health problems but the court cannot draw any inference that she will have a lessened ability to work. The defendant is in good health.
The plaintiff is holding Treasury Bills that were purchased with her mother's money. The court will make no order regarding them. Her mother is living. CT Page 8663
The plaintiff suffered three miscarriages during the marriage. For the first nine years the plaintiff employed birth control. The plaintiff contended the defendant did not welcome any of the pregnancies and that his attitude contributed to the breakdown.
The defendant accused the plaintiff of having an interest in another man with whom she worked and with whom training sessions were attended. The plaintiff moved out of the home on or about August 27, 1996. The plaintiff had met this particular man in Washington, D.C. for a weekend in March, 1996. She is still seeing this same man. The plaintiff's dalliance with this other man prior to separation is found to be a contributing cause of the breakdown. Ferrucci v. Ferrucci, 11 Conn. App. 369, 370-371. This conduct does not fall within the Venuti v. Venuti,185 Conn. 156 holding.
Having reviewed the evidence and having considered the statutory criteria of §§ 46b-81 and 46b-82, the court enters the following decree.
1. Judgment is entered dissolving the marriage on the ground that it has broken down irretrievably. The parties are declared to be unmarried.
2. No periodic alimony is awarded to either party.
3 . The plaintiff shall retain her retirement pension plan as her sole property.
4. The defendant shall retain his retirement pension as his sole property.
5. The plaintiff is awarded $80,000 to be transferred to her from the defendant's UTC Employee Savings Plan. The court retains jurisdiction for any additional documentation needed to effectuate this order.
6. The real estate located at 1206 Foxboro Drive, Norwalk, Connecticut is ordered sold. It shall be placed on the market immediately by a real estate broker agreed upon by the parties on terms mutually agreed upon. Either party may move for articulation of the order should the parties fail to agree on anything during the selling process. The net proceeds shall be divided equally between the parties. The defendant may continue CT Page 8664 to occupy the premises until closing provided he pay the mortgage installments from his separate funds and he shall pay all utilities as well as maintenance.
6. The parties shall divide equally the Paine Webber joint account, the joint checking account balances, the Fidelity joint account and all the remaining joint assets.
7. The plaintiff is awarded sole ownership and possession of the items listed on "Exhibit A" attached that are not crossed out, and shall return the four items noted on the bottom of the second page.
8. The plaintiff shall be solely responsible for her debts listed on her financial affidavit.
9. The defendant shall be solely responsible for his debts listed on his financial affidavit.
10. The plaintiff is awarded an allowance to prosecute of $15,000 to be paid by the defendant within 60 days.
11. The plaintiff's birth name shall be restored to her if she wishes.
Counsel for the plaintiff shall prepare the judgment file.
HARRIGAN, J.